## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARK ANTHONY JONES, #361-996     *

Plaintiff     *

v     *     Civil Action No. RDB-15-3778

RICHARD J. GRAHAM, Warden,     *
THE ATTORNEY GENERAL OF
   THE STATE OF MARYLAND,     *

Defendants     *

       ***

### MEMORANDUM OPINION

Pending is Mark Anthony Jones' ("Jones") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, challenging his convictions in the Circuit Court for Harford County, Maryland for attempted first-degree murder and related offenses. (ECF 1). Respondents' Answer, filed with transcripts of Jones' state proceedings, seeks dismissal of the Petition as time-barred or for lack of merit. (ECF 6). Jones filed a Reply. (ECF 7).

The case is briefed and ready for disposition. No hearing is necessary to resolve this case. Local Rule 105.6. (2016); *see also* Rule 8(a) of *The Rules Governing §2254 Proceedings*. For reasons to follow, the Petition will be DENIED and DISMISSED on the merits. This Court finds no cause to issue a Certificate of Appealability.

### FACTUAL AND PROCEDURAL BACKGROUND

Jones and Leslie Ricks ended their romantic relationship in March of 2009. (ECF 10). On March 14, 2009, Ricks obtained a protective order against Jones to prevent him from contacting and harassing her. Jones continued to attempt to contact Ricks, and at one point her sliding door at her home and her car were damaged. *Id.* On April 6, 2009, Jones threatened Ricks and her son in a voice message left at her office. The same day, Jones also called Rick's

father and threatened her life. *Id.*

On the evening of April 6, 2009, Ricks was driving home when two shots were fired at her car. *Id.* One bullet grazed Ricks' arm. Two bullet holes were visible in the car. Ricks did not see the assailant.

## I.    FIRST TRIAL

Jones was charged in the Circuit Court for Harford County with attempted first-degree murder, violating a protective order, and related charges. A three-day jury trial began on November 17, 2009. At trial, the prosecutor introduced telephone records related to Jones' cell phone use. Dan Jensen, a records custodian for Sprint/Nextel, testified that calls were made from a cell phone belonging Ricks. Jensen described the locations of the cell towers used by the cell phone between 8:15 p.m. and 9:29 p.m. on the evening of April 6, 2009, to explain the cell sites changed from Severn (near Jones' home) to the Harbor Tunnel, Rosedale and then to Belcamp (near the scene of the shooting and near the time of the shooting). Jensen acknowledged on cross-examination that this information neither identified the location of the cell phone nor the person who placed the calls. (ECF 5-10, ECF 5-2, ECF 5-11). Detective Thomas Walsh of the Harford County Sheriff's Office testified about use of cell phone records to pinpoint the caller's location. Walsh testified that he used cell phone records and real time information about the location of the cell phone to track Jones to a mall in Pennsylvania where he was arrested. (ECF 10).

The jury convicted Jones of stalking, telephone misuse, and three counts of violating a protective order. The jury was unable to reach a verdict on the attempted murder, assault, and weapons charges. As to these latter charges, the Circuit Court declared a mistrial and scheduled a retrial. (ECF 5-2).

## II.    SECOND TRIAL

On February 1, 2010, Jones was retried for attempted murder, assault, and weapons offenses.  As described later by the Court of Special Appeals of Maryland, the testimony presented at the second trial was "largely a reprise" of the first trial. (ECF 5-10 at 5).  On February 4, 2010, the jury found Jones guilty of attempted first-degree murder. (ECF 5-1).[1]  On March 19, 2010, the Circuit Court sentenced Jones to life imprisonment plus a consecutive eight years. *Id.*

## III.    DIRECT APPEAL

Jones raised two questions for review on direct appeal.  His first question was whether his conviction for attempted first-degree murder was barred by double jeopardy.  (ECF 1, ECF 5-7).  His second question was whether the trial court erred by denying his motion for a mistrial.  *Id.*

In an unreported opinion, filed on April 3, 2012, the Court of Special Appeals of Maryland ruled the double jeopardy question was unpreserved for appellate review because Jones had failed to file a Motion to Dismiss prior to the commencement of his second trial.  The Court reviewed the second question on the merits and affirmed the judgment of conviction. (ECF 5-10).  The court's mandate issued on May 3, 2012.  *Id.*

## IV.    STATE POST-CONVICTION PROCEEDINGS

Jones filed a Petition for Post-Conviction Relief on July 9, 2012, and an amended petition on May 17, 2013.  (ECF 5-11).  The petition alleged ineffective assistance of trial counsel [2] for failing to: (1) preserve for review a double jeopardy challenge, (2) raise a proper challenge to the State's inconsistent charges, and (3) object to a lay witness providing expert cell phone

---

[1]   On the first day of trial, the State *nolle prossed* the weapons charges. The jury later acquitted Jones of malicious destruction of property.  (ECF 5-1, ECF 5-10).

[2]   Jones was represented at both trials by Assistant Public Defender Lloyd Merriam.

testimony and alleged Jones "denied the colloquy under Md. Rule 4-215 to discharge his counsel." (ECF 5-11, 5-12, 5-13).

On May 31, 2013, the Circuit Court for Harford County held a hearing on the Petition. (ECF 5-12). On July 3, 2013, the Circuit Court denied post-conviction relief. (ECF 5-13). The denial was docketed on July 8, 2013. (ECF 1, ECF 5-15 at 2).

Jones filed an Application for Leave to Appeal dated August 5, 2013. (ECF 5-14). The Application for Leave to Appeal was date stamped by the Clerk of the Circuit Court on August 12, 2013, and docketed on September 9, 2013. (ECF 1, ECF 5-14). It was docketed on September 9, 2013. (ECF 5-1 at 19).

On June 9, 2014, the Court of Special Appeals of Maryland ordered the State to respond to Jones' Application for Leave to Appeal. The Order, as described by the State in its Response to Jones federal habeas petition, directed the State to address: "1) Did Dan Jensen present the type of cell phone testimony which qualified him as an expert in the functioning of cell phone equipment and operations; and if so, 2) Did trial counsel render ineffective assistance by failing to object that Dan Jensen was not qualified to present the testimony he presented?" (ECF 5-15).[3] The State responded as directed, and also argued that Jones' Application for Leave to Appeal was time-barred because it was filed five days after the 30-day deadline for filing had passed. *Id.*

The Court of Special Appeals summarily denied the Application for Leave to Appeal on December 15, 2014, with the court's mandate issuing on January 14, 2015. (ECF 5-16) (stating the Application for Leave to Appeal from the denial of post-conviction relief, "having been read and considered, is denied"). Jones filed this §2254 Petition on December 4, 2015. (ECF 1).

---

[3] The Order is not included in the record before this Court.

## TIMELINESS

A one-year statute of limitations applies to habeas petitions for a person convicted in a state court. *See* 28 U.S.C. §2244(d). The one-year limitation period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244 (d)(1).

Relevant here for starting the limitations period is the date on which Jones' judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. §2244(d)(1)(A). The time for filing is statutorily tolled when a properly filed application for state post-conviction or other collateral review is pending. *See* 28 U.S.C. §2244(d)(2).

The Court of Special Appeals' mandate affirming Jones' conviction issued on May 3, 2012, therefore Jones' conviction became final for direct appeal purposes on May 18, 2012, when the time for seeking further review in the Court of Appeals of Maryland expired. *See* Md.

Rule 8-302 (requiring certiorari petition to be filed in the Court of Appeals no later than 15 days after the Court of Special Appeals issues its mandate).  Respondents assert Jones did not file a timely Application for Leave to Appeal, and the Court of Special Appeals' summary denial of the Application should be construed as resolving Jones' pleading based on that procedural failing. (ECF 5).[4]  In support, Respondents cite to *Walker v. Martin*, 562 U.S. 307, 315 (2011) and *Wilson v. Moore*, 178 F.3d 266, 274 (4th. Cir. 1999), without elaboration. (ECF 5 at 28).  Respondents argue that if Jones did not timely file for leave to appeal the denial of post-conviction relief, then between May 18, 2012 and July 9, 2012 (over one month) and between August 7, 2013 and December 10, 2015 (more than two years), he had were no properly filed state post-conviction or other collateral proceedings to statutorily toll the running of the one-year limitations period, and his federal petition is time-barred. (ECF 5).

In *Walker v. Martin*, 562 U.S. at 315, the Supreme Court held a California procedural timeliness requirement was an independent and adequate state ground sufficient to bar federal habeas review.  In *Wilson v. Moore*, 178 F.3d at 274, the Fourth Circuit explained when it is unclear whether the state court ruled on the merits or on independent and adequate state procedural grounds, the habeas court can look to the text of the state court order and the surrounding circumstances.  In this case, the Order summarily denying the Application for Leave to Appeal is silent about the basis for rejection.  Because Respondents were directed to address specific claims and the subsequent Order did not identify the basis for denial of Jones' Application, this Petition will not be dismissed as time-barred.  Consideration of the Petition shall proceed on the merits.

---

[4]  In Maryland, a petitioner has thirty days to file an Application for Leave to Appeal the denial of post-conviction relief. Md. Code Ann. Crim. P. Art., §7-109; Md. Rule 8-204. This requirement is jurisdictional. *Keys v. State*, 195 Md. App. 19, 27 (2010); *Michael v. State*, 85 Md. App. 735, 738 1991) (stating "the rationale for requiring strict adherence to the time requirements in the case of appeals of right is no less persuasive where application for leave to appeal is sought").

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. §2254 sets forth a highly deferential standard for evaluating state-court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). Not only is the standard "highly deferential," it is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181, (2011); *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254 (d).

A state adjudication is contrary to clearly established federal law under §2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Importantly, a federal habeas court cannot disturb the state court's ruling simply because it is incorrect; it must also be unreasonable. *Harrington*, 562 U.S. at 100-01.

Under §2254(d)(2), "a state-court factual determination is not unreasonable merely

7

because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S.290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379. Jones' claims will be examined in the context of this deferential analytical framework.

## DISCUSSSION

Jones seeks federal habeas relief on the following grounds: (A) trial counsel was ineffective for: (1) failing to preserve for review a Double Jeopardy challenge and inconsistent charging, and (2) failing to object to a lay witness providing expert cell phone testimony; and (B) he was "denied the colloquy under Md. Rule 4-215 to discharge his counsel." (ECF 1 at 6).

## I.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

To establish a claim of ineffective assistance of counsel, a petitioner must show both that

counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The second element of this standard requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687.  The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669.  A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 at 689).  "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 109 (2011)(citations and internal quotation marks omitted); *see also Sharpe v. Bell*, 593 F.3d at 383 (4th Cir. 2010).  "The standards created by *Strickland* and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington,* 562 U.S. at 105 (citations omitted).  "When §2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether

there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and the burden to show that counsel's performance was deficient rests squarely on the defendant. *See Burt v. Titlow,* 134 S.Ct. 10, 17 (2013).

The second prong requires a court to consider whether counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's error must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

## A. FAILURE TO PRESERVE DOUBLE JEOPARDY CLAIM

Jones claims trial counsel was deficient for failing to file a Motion to Dismiss the Indictment and to raise objections to preserve the issue for direct appeal. Jones alleges counsel's ineffective representation caused him to be retried and convicted of charges on which the jury was unable to reach a verdict at his first trial. (ECF 1 at 6).

In Jones' first trial, the jury initially returned a verdict of guilty of attempted first-degree murder, stalking, telephone misuse, and violating a protective order and not guilty of possession

of a firearm by a disqualified person, wearing/carrying a firearm and transporting a firearm in a

vehicle on a public road, use of a handgun during the commission of a felony, and malicious

destruction of property over $500.00. (ECF 5-2 at 68-70).  After the trial judge polled the jurors,

he asked whether there was any issue as to the unanimity of the verdict by the State.  *Id.* at 70-

72.  No issue was raised as to this point.  Trial counsel then requested a side bar conference where

he expressed concern the verdicts were inconsistent.  *Id.* at 72.[5]

    A recess was taken to examine the case law surrounding inconsistent verdicts.  Upon

reconvening, the trial court stated:

> That gets us all to the next issue, and that is defense counsel has appropriately
> raised the issue of this being an inconsistent verdict.  We are all aware of the
> case that came out last year [*Price v. State*, 405 Md. 10 (2008)] which
> revolutionized Maryland Law...[6]

***

---

[5]  Although trial counsel did not explain why the verdict was inconsistent, presumably it was because the jury returned a guilty verdict of attempted murder but acquitted him on the firearms charges.  The prosecution's theory at trial was that Jones tried to kill Ricks by shooting her.  During the post-conviction hearing defense counsel explained the inconsistency was finding Jones not guilty of gun possession when there was no evidence of an assault or attempted murder other than the shooting. (ECF 5-12 at 8).

[6]  The Court of Special Appeals has explained:

> In *Price v. State*, 405 Md. 10 (2008), the Court of Appeals revisited "the Maryland
> common law principle that inconsistent jury verdicts are normally permissible in criminal
> jury trials."  The Court concluded that "there is no longer any justification for the one
> remaining situation where inconsistent verdicts are tolerated, namely certain types of
> inconsistent verdicts by a jury in a criminal trial.  Accordingly, the Court ruled "with
> regard to the instant case, similarly situated cases on direct appeal where the issue was
> preserved, and verdicts in the criminal jury trials rendered after the date of our opinion
> this case, inconsistent verdicts shall no longer be allowed. [citations omitted].

> Judge Harrell filed a concurring opinion, which Judge Battaglia joined in full and Judge
> Wilner joined in part.  Judge Harrell agreed with the "sea change' or clarification of the
> law of inconsistent verdicts, and observed that the "Majority opinion properly notes that
> "where the issue was preserved'...inconsistent verdicts shall no longer be allowed.
> [citation omitted].

*Jones v. Maryland*, CSA No. 512, (Sept. Term 2010); *See* ECF 5-10 .n. 6.

> The problem that the Court has with all of this, which I don't think is really addressed in the majority opinion of [*Price*,] the problem that the Court has here is that we are really dealing with a potential factual inconsistency versus what I would call an absolute legal inconsistency. I think the *Price* concurring Judge Harrell's opinion talks about the distinction between them. So that is the concern.
>
> Brainstorming a little bit, the potential here is that the jury could very well have found beyond a reasonable double that the Defendant was, in fact, part of this attempt to kill Ricks, but they were not convinced beyond a reasonable double that he was the one who actually pulled the trigger, thus implicating a second person being present in the car.

(ECF 2 at 74-75).

The trial judge speculated the jury may have inferred Jones was in the car from which the shots were fired at Ricks, but did not hold the weapon. Defense counsel had asked in his summation how Jones could "be trying to kill somebody, drive, talk on the phone, and do all of these other things with only two hands." *Id.* at 75. The trial judge continued "the same facts that supported [defense counsel's] argument about the need for [Jones] to have more than two hands could also support a concern by the jury that perhaps there were more than two hands there belonging to a different human being." *Id.* The trial court also noted Jones' testimony that he had lent his cell phone to a man named Tony White. *Id.*; ECF 5-5 at 71-73.

The trial court instructed the jury to explain the verdicts:

> Ladies and gentlemen of the jury, you have returned a verdict of guilty as to attempted first degree murder of Leslie Ricks and a not guilty verdict as to each of the three counts involving possession or use of a handgun. This is arguably an inconsistent verdict which are [sic] impermissible under Maryland Law. You need to unanimously explain how the verdict is not inconsistent, that is, your rationale, and if you cannot explain that then you must continue deliberations and return verdicts of not guilty or guilty that are consistent or advise the Court if you are unable to reach a verdict as to any particular count.
>
> So, I will send you back to continue your deliberations. If you can supply an explanation that you all agree upon, then Madam Foreperson, you would after conferring with all of the jurors write that out and make sure all twelve are in

agreement, because if you do that when you come back with that, and you should communicate if you have or have not to me, after you have read the explanation I, of course, then will poll every juror as we did before as to whether those words speak for their thoughts also.  So, I will send you back.

(ECF 5-2 at 78).

The jury was sent back to provide an explanation of the verdicts.  They returned with the following explanation:

The State showed **NO** evidence to support any of the gun charges. However, based on the criteria outlined for us for attempted murder in the first degree the State proved, one, evidence shows Mr. Jones traveled to the area with the intent to follow through on his phone threats. This in our view is substantial steps beyond mere preparation. Two, the State has also shown evidence that the Defendant did have the ability to follow through, that is he had access to vehicles.  Three, the Defendant showed willfulness, premeditation and deliberation in his repeated threats, where he included a timeline to cause Ms. Ricks harm, and escalating violent threats to cause harm. There is no doubt in our minds that he intended to kill Ms. Ricks.

*Id.* at 79-80 (noting the word "no" was underlined and capitalized). [7]

After the trial judge proposed further jury deliberation because there was "no evidence of attempting to kill Ricks with a vehicle," Jones' defense counsel asked for a mistrial. *Id.* at 81, 83. The trial judge responded that he understood *Price* to require him to send the jury back for further deliberation. *Id.* at 81, 82.  The trial judge acknowledged defense counsel's "first choice was to declare a mistrial" and asked whether the following instructions were acceptable to the prosecution and to the defense, stating:

Let me read this one last time.  Based upon your explanation, your verdict is inconsistent. Enclosed is a new verdict sheet.  Please continue deliberations. Your possible verdict as to each count is either not guilty or guilty.  In the event that you cannot reach [ ] a unanimous verdict as to any count, please advise the Court of that.  Is that acceptable to the State?

*Id.* at 85.  Both counsel indicated the instructions were acceptable.  *Id.*

---

[7]   Although the trial court indicated it would poll the jury, the court did not, in fact, poll the jury on the unanimity of the explanation, and the record is silent as to whether each juror read and agreed to the explanation as written. *Id.* at 78-79.

After more deliberation, the jury informed the trial court that it could not agree on the charges. The jury forewoman stated the jury was unanimous as to some counts and that further deliberations would be futile. *Id.* at 88. The court proposed taking verdicts on the agreed-upon counts and declaring a mistrial as to the remainder, and both parties agreed. *Id.*

## 1. POST-CONVICTION PROCEEDINGS

At Jones' post-conviction hearing, trial counsel was asked why he had not filed a Motion to Dismiss the second trial. Trial counsel testified that it had not occurred to him to file a motion to bar the second trial. (ECF 5-12 at 8). He said:

> … [t]he testimony was that this woman was driving home and a car came off of a side street as she got near her house. The car pulled alongside her and fired through that car's passenger window. Whether it was up or down, I don't recall. And then it sped off. That was the attempted murder and there was no other argument of assault first or other weapons and so on. So it didn't make sense that [the jury] could find no use of a gun but an attempt to murder, and I didn't see any way to reconcile that.

> So I don't quite understand, to this day even, the issue with jeopardy having attached when you can't reconcile these. How do we say that—how do we say that the—how would we ignore convictions of the attempted murder but, you know, how do we choose one over the other? I'm struggling to express it, but how does that become a finding when there is lack of logic?

*Id.* at 9.

In denying Jones' claim of ineffective assistance for failing to preserve a Double Jeopardy claim, the post-conviction court determined:

> The Petitioner's first allegation of error is that Mr. Merriam's failure to file a Motion to Dismiss the Indictment on the grounds that the second trial was barred by double jeopardy amounted to ineffective assistance of counsel. While the double jeopardy issue was raised by Petitioner in his direct appeal the Court of Special Appeals found that the issue was not preserved for appeal and thus did not decide the issue on the merits. However, I find that Petitioner's second trial was not barred by double jeopardy, and as a result, trial counsel's actions do not amount to ineffective assistance of counsel.

> As discussed above in Petitioner's first trial the jury returned a verdict that

appeared to be inconsistent. Upon trial counsel raising that issue to the trial judge before the verdict was harkened,[8] Judge Waldron attempted to resolve that issue by requesting that the jury explain its verdict. Petitioner argues that the jury's explanation of their verdict amounted to an acquittal and therefore barred retrial of the Defendant on the attempted murder charge and the lesser included offenses.

Judge Harrell's concurring opinion in the *Price* case outlines the permissible outcomes upon a timely objection to inconsistent verdicts by the Defendant. After the jurors are permitted to resume deliberations, as they were in this case, the jury is "free to resolve the inconsistency either by returning verdicts in the defendant's favor, convicting on the implicated counts, or deadlocking on a charge so that no inconsistent finding results." *Price*, 405 Md. 10. In this case, the jury solved the inconsistency by deadlocking on certain charges as to not return a verdict that was inconsistent. Since no final verdict was returned on these charges, and since a mistrial was declared on the same in light of the deadlock, the state was free to retry the Defendant as to those deadlocked counts. Furthermore, trial counsel was present and testified at Petitioner's post-conviction hearing. Mr. Merriam testified that he did not file a motion to dismiss because a double jeopardy issue did not occur to him. He confirmed that when the inconsistent verdicts issue was first raised by him he met with Judge Waldron and the State in chambers and they reviewed the *Price* case at that time. Mr. Merriam was satisfied with the chosen course of action and felt that it was consistent with *Price*. Therefore he did not think that double jeopardy issues were implicated.

I agree with Mr. Merriam. Therefore, the actions of the court and of trial counsel did not subject the Defendant to double jeopardy. Since Petitioner has failed to overcome the strong presumption that trial counsel rendered effective assistance in a manner that was within reasonable professional judgment relief on the basis of this allegation of error is denied.

(ECF 5-13 at 9-10).

Under the Double Jeopardy Clause of the Fifth Amendment, no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Double Jeopardy Clause prohibits 'successive prosecutions for the same offense as well as the

---

[8] "[H]earkening of the verdict is a common law concept that has been the standard practice in Maryland for more than a century." *Hall v. State*, 2016 WL 2944941 *3 (Ct. Sp. App., May 17, 2016) citing *State v. Santiago*, 412 Md. 28, 31 (2009)). Harkening requires the trial court to inquire in open court, before the jurors are discharged, whether the jury agrees with the verdict announced by the foreperson. *Id.* (citing *Givens v. State*, 76 Md. 485, 487–88 (1893)). Its purpose is to "secure certainty and accuracy and to enable the jury to correct a verdict which they have mistaken, or which their foreman has improperly delivered." *Givens*, 76 Md. at 488. "[A] jury verdict, rendered and announced in open court, that is neither polled nor hearkened is not properly recorded and is therefore a nullity." *Santiago*, 412 Md. at 32.

imposition of cumulative punishments for the same offense in a single criminal trial.'" *United States v. Gregory*, 639 Fed. Appx. 913, 915 (4th Cir. Feb. 4, 2016) (quoting *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012)). "[R]etrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Arizona v Washington*, 434 U.S. 497, 505 (1978). Rather, the double jeopardy bar may be avoided if the prosecution "demonstrate[s] 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.*

The post-conviction court decided Petitioner's second trial was not barred by double jeopardy, and as a result, trial counsel's actions did not amount to ineffective assistance of counsel. After the jurors were instructed to resume deliberations they were free to resolve the factual inconsistency either by returning verdicts in Jones' favor, convicting him on the implicated counts, or deadlocking on a charge so that no inconsistent finding resulted. In this case, the jury solved the inconsistency by deadlocking on certain charges. The post-conviction court reasoned that since no final verdict was returned on the deadlocked charges, and since a mistrial was declared on the same in light of the deadlock, the state could to retry the Defendant as to those deadlocked counts. Double jeopardy did not attach.

The post-conviction court explained that trial counsel raised the issue of inconsistent verdicts after the jury was polled and before the verdict was harkened and finalized.[9] The trial judge attempted to clarify the issue by requesting that the jury explain its verdict. Respondents note Jones was not acquitted of a lesser included offense within the greater offense for which he was convicted. The trial court could have accepted the jury's initial pronouncement finding Jones guilty of attempted first-degree murder. Instead, the trial court asked for an explanation of the

---

[9]   Although the Court of Special Appeals' disposed of this issue as unpreserved, the appellate court seems to have questioned whether a verdict properly issued so that double jeopardy attached. (ECF 5-10 at 17) ("After the jury's verdict, or lack thereof, in the first trial....").

verdict in light of *Price*, 405 Md. at 10.

The post-conviction court concluded that if there was inconsistency in the verdicts, it was factual and not legal, a determination amply supported by the trial and post-conviction hearing transcripts. *See e.g.* ECF 5-2 at 74-76; ECF 5-12 at 8. This resulted in the jury changing its initial unanimous pronouncement of guilty on attempted first-degree murder to declare that it could not reach a unanimous verdict on any of the attempted murder (and lesser included charges) and firearms charges. (ECF 5-2 at 89-92).

Having concluded double jeopardy did not attach, the post-conviction court reasoned trial counsel was not deficient for failing to file a Motion to Dismiss prior to the start of the second trial. The state court's rejection of Jones' ineffective assistance claim was not an unreasonable application of *Strickland* to the facts of this case. Trial counsel testified at the post-conviction hearing that the holding in *Price*, "changed the law completely" and sending the jury back to deliberation after its initial pronouncements reflected the efforts of the trial court, prosecution, and defense to reconcile inconsistent verdicts in light of recent case law. (ECF 5-12 at 7). The state post-conviction court further concluded the jury was instructed to return to its deliberations before the verdicts were finalized, and thus inferred double jeopardy did not attach.

Under these facts, Jones does not meet his burden to show the state's adjudication "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). He has failed to overcome the strong presumption that trial counsel rendered effective assistance consistent with reasonable professional judgment. The state post-conviction decision is supported by the record and without error. Accordingly, habeas relief is denied as to

this claim.

## B. FAILING TO OBJECT TO TESTIMONY

Jones next claims his trial counsel was ineffective for failing to object to a lay witness providing expert testimony about cell phone technology.      The state post-conviction court rejection of this claim reads in part:

> The transcript of the proceedings clearly shows that, in fact, the witness stated that from just looking at the records he could not tell us the proximity of the cell phone to the tower. In this case what the witness did was simply read from the records, of which he was custodian, to identify the cell site that corresponded with each call made from the Defendant's phone. In this case the witness did not triangulate the Defendant's location, he did not map the route of the Defendant using additional software, and his testimony did not reach the level of expert testimony. This can be distinguished from the *Wilder v. State of Maryland*, 191 Md. App. 319 (2010) case where a detective testified, using a map that he created with computer software to show the defendant's movements, as to the whereabouts of the defendant at and around the time of the crime. In that case the detective testified about how he was able to get the longitude and latitude for every originating and terminating cell tower to plot the defendant's movements on his map. The court, in the *Wilder* opinion, stated that "because his explanation of the method he employed to translate the cell phone records into locations is demonstrably based on his training and experience, we conclude that he should have been qualified as an expert." The court relied on the opinion in *Ragland* which held that "opinions based on a witness's training and experience... should only be admitted as expert testimony, subject to the accompanying qualifications and discovery procedures." *Ragland* at 870.    Again, in the case at bar the witness did not use any technical method or program to map the Defendant's movements. He did not provide an expert opinion as to the location of the Defendant at the time of the crime. Instead Mr. Jensen simply read information from the records in response to direct questions asked by the State.
>
> *******
>
> Furthermore, trial counsel is not required to object to evidence on the basis of anticipated changes in the law. *State v. Calhoun*, 306 Md. 692, cert. denied, 480 U.S. 910 (1987). "As *Strickland* makes plain, counsel must be judged upon the situation as it existed at the time of trial." *Id.* At the time of the trial *Wilder* had not been decided. There was no duty on counsel to foresee what the court might hold in that case. *Calhoun* at 735. I find that the Petitioner has failed to show that the actions of trial counsel were not within the range of professional norms for effective assistance of counsel. In this case there was no controlling law on point at the time of trial, and therefore there was no requirement that Mr. Merriam object to the evidence. Petitioner has not overcome the strong presumption that

trial counsel rendered effective assistance in a manner that was within reasonable professional judgment. *Strickland* at 690; *Oken* at 283.

(ECF 5-13 at 11-12, 13).

"The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland*, 466 U.S. at 685 (quoting *Adam v U.S. ex rel. McCann*, 317 U.S. 269, 275, 276 (1942)). The right to effective assistance of counsel, however, does not require counsel to be prescient. A trial attorney is not ineffective for failing to foresee changes or advances in the law. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995) (counsel's assistance is not rendered ineffective because he failed to anticipate a new rule of law). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. As noted by the post-conviction court, Jones' claim relies on *Wilder v. State of Maryland*, 191 Md. App. 319 (2010), a case which was decided after his retrial. Furthermore, Jensen did not provide an expert opinion as to Jones' location at the time of the crime. Jensen did not use any technical method or program to map Jones' movements. He simply read information from the records in response to direct questions asked by the prosecutor. Trial counsel testified at the post-conviction hearing that he felt comfortable cross-examining Jensen. In fact, trial counsel elicited testimony from Jensen, conceding that he was unable to state the proximity of the cell phone to the tower, pinpoint the location of the cell phone, or identify the caller.

The state court decision denying relief on this claim is amply supported in the record. The state court decision is neither contrary to or an unreasonable application of clearly announced

Supreme Court law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Habeas relief will be denied as to this claim.

## II.    CLAIM THE TRIAL COURT VIOLATED MARYLAND RULE 4-215

Lastly, Jones claims he was "denied the colloquy under Md. Rule 4-215 to discharge his counsel." ECF No. 1 at 6. He provides no additional allegations or facts to support this claim. Respondents correctly observe this ground raises no basis for relief.

The federal habeas statute "unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, (2010) (quoting 28 U.S.C. §2254(a)). Only noncompliance with federal law renders a state criminal judgment subject to collateral attack in federal court. Accordingly, violations of state law which do not infringe on specific federal constitutional protections are not cognizable under §2254. *See Estelle v McGuire*, 502 U.S 62, 67–68 (1991). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* "Federal habeas corpus relief does not lie for errors of state law." *Id.* at 67. (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Because this claim is not cognizable on federal habeas review, the claim must be denied.

### CONCLUSION

For these reasons, the Petition will be denied, and this case will be dismissed by separate Order. When a district court dismisses a habeas petition, a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies relief on the merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment

of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000);

*see Miller-El v. Cockrell*, 537 U.S. 322, 336-38, (2003).  Jones does not satisfy this standard, and

this Court declines to issue a Certificate of Appealability.


November 9, 2016
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE